

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 9, 2020

**BY ECF**
Hon. John P. Cronan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

>   Re:   *United States v. Daniel Spiegelman*, 20 Cr. 609 (JPC)

Dear Judge Cronan:

The Government submits this letter in advance of the February 16, 2020 sentencing of the defendant, Daniel Spiegelman ("Spiegelman" or the "defendant"). For the reasons set forth below, the Government respectfully submits that a sentence within the guidelines range (the "Guidelines Range") of 15 to 21 months' imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

### I.   Offense and Relevant Conduct

The instant charges relate to Spiegelman's escape from the Bronx Residential Reentry Center (the "Bronx RRC"), a halfway house located in the Bronx, New York, to which he was transferred from the federal prison at which he had been incarcerated. (PSR ¶¶ 8-9.) At the time he escaped from the Bronx RRC, Spiegelman was serving a 44-month sentence imposed by Judge Sullivan, based on a conviction for one count of bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2, one count of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A, and one count of possession of five or more identification documents and false identification documents, in violation of Title 18, United States Code, Section 1028(a)(3). (PSR ¶¶ 7; *United States v. Spiegelman*, 10 Cr. 339 (RJS).)

On July 10, 2010, Spiegelman was transferred from the Federal Correction Institution, Lexington, Kentucky, to the Bronx RRC. (PSR ¶ 9.) On October 4, 2012, Spiegelman left the Bronx RRC without authorization. (PSR ¶ 10.) Spiegelman failed to return to the Bronx RRC at any time thereafter. (*Id.*)

### II.   Procedural History, Guilty Plea, and Applicable Guidelines Range

On September 20, 2020, Spiegelman was arrested pursuant to a criminal complaint charging him with violations of 18 U.S.C. §§ 751(a) and 4082(a). On November 13, 2020, the

Government filed an information containing the same charges (the "Information"). On November 13, 2020, Spiegelman pleaded guilty to the one-count Information. The offense of conviction carries a maximum term of imprisonment of 5 years. On October 14, 2020, the Government provided Spiegelman with a letter pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991) (the "*Pimentel* Letter") in advance of his guilty plea.

As explained in the *Pimentel* Letter, the Government calculates Spiegelman's total offense level as follows:

- The November 1, 2018 edition of the Guidelines Manual is applicable to the offense charged in the Information.

- Pursuant to U.S.S.G. § 2L1.2(a)(1), the base level offense is 13 because the custody or confinement from which the defendant escaped was by virtue of a conviction of any offense;

- Pursuant to U.S.S.G. § 2P1.1(b)(3), a four-level reduction is warranted because the defendant escaped from the Bronx RRC, which is a non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, and the defendant neither returned voluntarily within ninety-six hours nor committed a federal, state or local offense while away from the Bronx RRC.

- The offense level is decreased by two levels because Spiegelman demonstrated acceptance of responsibility through his allocution (and will presumably continue to accept responsibility prior to imposition of a sentence). *Id*. § 3E1.1(a).

Therefore, the total offense level under the Sentencing Guidelines is 7.

With respect to criminal history, the *Pimentel* letter calculated 14 criminal history points placing Spiegelman within Criminal History Category VI. The Probation Office concurs in this calculation. (PSR ¶¶ 24, 33.)

Accordingly, Spiegelman's Guidelines Range is 15 to 21 months' imprisonment.

### III. Discussion

#### A. Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines remain "the starting point and the initial benchmark" for sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*. at 46. For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider the factors set forth at 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). The factors also include the "need for the sentence imposed"

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

*Id.* § 3553(a)(2).

### B. The Court Should Impose a Sentence Within the Guidelines Range

A sentence within the Guidelines Range would appropriately take into account the factors set forth in 18 U.S.C. § 3553(a).

*First*, a sentence within the Guidelines Range would serve the significant goals of promoting respect for the law and affording adequate specific deterrence. This is the defendant's second escape conviction. The defendant was previously released from federal custody to the Le Marquis Community Corrections Center in August 1999. (PSR ¶¶ 27-28.) Spiegelman was subsequently arrested in Connecticut in October 1999. The defendant had not received authorization to be in Connecticut on that date. The defendant was sentenced to a 24-month incarceratory sentence for escape, in violation of 18 U.S.C. § 751, and interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314. (*Id.*; *United States v. Spiegelman*, 99 Cr. 1099 (LAP).) In this, Spiegelman's second escape case, he unlawfully remained on escape status for eight years. A Guidelines sentence is therefore appropriate to deter the defendant from future misconduct and to promote respect for the law.

*Second*, a sentence within the Guidelines Range is also warranted for purposes of general deterrence. A substantial number of inmates serve a portion of their federal sentence at residential reentry programs. Many of them may be tempted to leave such programs without authorization, rather than completing their adjudicated sentence. Widespread disregard for the terms of imprisonment, as set by the Courts and the BOP, erodes public confidence and puts the community at risk. A sentence within the Guidelines Range would send an important message to both the public and convicted felons that the terms of a federal sentence will be enforced.

*Third*, the history and characteristics of the defendant support a sentence within the Guidelines Range. The defendant has a long history of illegally possessing other individuals' identities, creating false documents, and transporting stolen goods. (PSR ¶¶ 26-30.) As a result, the defendant has been incarcerated on numerous occasions since the age of nineteen. Indeed, this

case represents the defendant's fifth federal conviction in this District. And, as noted *supra*, this case represents the defendant's second escape from federal custody. The defendant's extensive criminal record warrants a sentence within the Guidelines Range.

The circumstances under which Spiegelman may have left the Bronx RRC do not militate otherwise. Spiegelman states that he unlawfully escaped the Bronx RRC due, at least in part, to experiencing a panic attack. (Def. Sent. Br. 2.) However, even if Spiegelman's explanation is credited, it fails to explain why he failed to return to the Bronx RRC. Indeed, the defendant had eight years to contemplate his misconduct. Further, Spiegelman appears to have intentionally evaded law enforcement's efforts to locate him. The defendant worked off-the-books and moved frequently. (PSR at 23.) He intentionally avoided applying for a driver's license, which he acknowledges limited his job prospects. (Def. Sent. Br., Ex. C, at 3-4.) The circumstances surrounding Spiegelman's initial departure from the Bronx RRC, therefore, do not justify a sentence outside the Guidelines Range.

Nor do the current conditions at the MCC resulting, at least in part, from the COVID-19 pandemic, warrant a sentence outside the Guidelines Range. Spiegelman argues that a time-served sentence is justified on the ground that "[t]he COVID-19 pandemic has caused [him] to suffer under the hardships imposed upon him in prison, way beyond what the Court may normally expect upon imposition of a term of incarceration." (Def. Sent. Br. at 5.) While the Government is generally sympathetic to the impact of COVID-19 protocols on inmates, Spiegelman does not claim to have experienced COVID-19 symptoms, nor does he appear to present any medical conditions that would place him at greater risk of suffering negative COVID-19 health outcomes. The reality of the COVID-19 pandemic—which has affected the liberties of society at large—should not, in and of itself, warrant a sentencing reduction. Moreover, it should not justify a sentence of time served, which, for the reasons discussed above, would fail to adequately promote respect for the law or to afford adequate deterrence.

**IV.    Conclusion**

      For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines Range of 15 to 21 months' imprisonment.

      Respectfully submitted,

      AUDREY STRAUSS
      United States Attorney

By: _____
      Mitzi S. Steiner
      Assistant United States Attorney
      (212) 637-2284